BURNELL O. SCHULZ, APPELLANT, v. GENERAL WHOLESALE COOPERATIVE COMPANY, INC., A NEBRASKA COOPERATIVE CORPORATION, ET AL., APPELLEES.

238 N. W. 2d 463

Filed February 11, 1976. No. 40052.

Nelson, Harding, Marchetti, Leonard & Tate, Kenneth Cobb, and Scott E. Daniel, for appellant.

Jewell, Otte, Gatz, Collins & Domina, for appellees.

Heard before SPENCER, NEWTON, and CLINTON, JJ., and HENDRIX and BUCKLEY, District Judges.

BUCKLEY, District Judge.

In this appeal, the issue is whether counsel for the injured employee in a tort claim should be allowed attorney's fees from that portion of the total settlement attributable to the workmen's compensation subrogation claim of his employer. The trial court denied such allowance and we affirm.

The plaintiff, Burnell O. Schulz, an employee of defendant General Wholesale Cooperative Company, Inc., was seriously injured on February 13, 1973, while unloading a railroad car in Norfolk, Nebraska. A door inside the car came off the track and fell on him, causing various injuries which ultimately resulted in a medical evaluation of 100 percent permanent disability.

Immediately following the accident, defendant St. Paul Fire and Marine Insurance Company, the workmen's compensation insurer for plaintiff's employer General Wholesale, retained the firm of Jewell, Otte, Gatz, Magnuson & Collins to represent its interest as to plaintiff's compensation claim and to investigate the accident with a view toward a subrogation claim against any third party responsible. The third party turned out to be Pacific Fruit Express Company, owner of the railroad car, and it was duly notified of St. Paul's subrogation claim.

From the date of the accident, February 13, 1973, until May 10, 1974, plaintiff was not represented by counsel. During this time, all investigation regarding the accident and plaintiff's medical condition, and all contact and negotiations with representatives of Pacific Fruit Express were accomplished by Arlen Magnuson from the Jewell, Otte law firm, which was done solely in connection with St. Paul's subrogation claim. On May 10, 1974, plaintiff retained counsel, including Kenneth Cobb, to represent him in his own claim against Pacific Fruit Express. On May 20, 1974, Magnuson and Cobb met to discuss and coordinate their respective interests. After that date, all further investigation and negotiations with Pacific Fruit

Express were done by Cobb, which resulted in a total settlement of $125,000 in October 1974. No lawsuit was ever filed. To complete the settlement, a petition for approval of a lump sum settlement was granted by the District Court for Madison County, Nebraska. The terms of the settlement provided that St. Paul would receive $12,409.99 in refund for the medical and hospital expenses and temporary total disability payments which it had previously paid to and for the plaintiff. St. Paul would also receive full credit for its future workmen's compensation liability in the amount of $34,936.75. Plaintiff received the balance of $112,590.01.

Cobb's basic contention is that at the time he was retained by plaintiff, Magnuson's investigation for St. Paul had not established to the satisfaction of Pacific Fruit Express either its liability for the accident or plaintiff's total disability as a result thereof; that Cobb's efforts did result in a settlement based upon agreed liability and total disability; that St. Paul benefited from those efforts in recovering in full its subrogation claim; and that, therefore, Cobb should be entitled to an attorney's fee from St. Paul for the benefit it received.

Plaintiff's claim is based upon that part of section 48-118, R. R. S. 1943, which provides in part that: "If the employee or his personal representative or the employer or his compensation insurer join in the prosecuting of such claim and are represented by counsel, the reasonable expenses and the attorney's fees shall be, unless otherwise agreed upon, divided between such attorneys as directed by the court before which the case is pending and if no action is pending then by the district court in which such action could be brought." The statute provides no specific guidance as to what the court should consider in determining a proper division of attorneys' fees and expenses between counsel.

We have considered this question twice previously. In Gillotte v. Omaha Public Power Dist., 189 Neb. 444, 203 N. W. 2d 163, the injured employee sued the third

party and obtained a verdict of $79,263. The employer's compensation carrier did not retain counsel to represent its subrogation interest until suit was filed. Thereafter, employer's counsel filed the appropriate pleadings claiming subrogation interest, did not participate in the trial (at the request of plaintiff's attorney), and furnished some minor research assistance. The judgment was successfully defended on appeal, in which the employer took no part. The total advantage to the employer was over $29,000 and the trial court allowed an attorney's fee to plaintiff of $10,000. In affirming this award, we said: "The workmen's compensation insurer contends that where the employer or his workmen's compensation insurer is represented by its own counsel and its attorney offers to assist in the preparation and trial, the district court may not deduct any attorney's fees from the insurer's share of the judgment.

"That contention is disposed of by the terms of section 48-118, R. R. S. 1943, itself. Even if the employee and employer or his insurer join in the prosecuting of a claim and are represented by counsel, the reasonable expenses and attorney's fees, in the absence of agreement, are to be divided between such attorneys as directed by the court. To permit an employer or his workmen's compensation insurer to refuse to reimburse an employee for reasonable expenses and fees incurred in the recovery of a judgment against a third party for the benefit of the employer or his insurer under their right of equitable subrogation simply because a pleading had been filed by employer's counsel asserting the admitted right of subrogation would twist the statute and destroy its purpose. It would constitute a return to the situation as it existed prior to the amendment of section 48-118, R. R. S. 1943, in 1963."

Thus, we made it clear that the mere fact that the employer or its compensation carrier retains counsel to represent its subrogation interest will not, in and of it-

self, prevent an allowance of attorney's fees to the employee's counsel from the subrogation recovery.

In Versch v. Tichota, 192 Neb. 251, 220 N. W. 2d 8, the employee filed suit but made a settlement, when the cause came to trial, for $15,000. The employer City of Omaha was joined in the suit to determine its subrogation rights. With the parties unable to agree on distribution of proceeds, the court ordered $8,250 to the plaintiff and $6,750 to the city. Plaintiff's counsel applied for allowance of one-third of the city's recovery as an attorney's fee but was allowed $1,350. We did not detail further the services rendered by both counsel but we did observe: "By cross-appeal the plaintiff contends that the award of attorney's fees in the sum of $1,350 was inadequate. The thrust of the plaintiff's contention is that the award of attorney's fees should have corresponded with the contingent fee contract with the plaintiff. While this may be a proper factor that rests in the court's consideration, there are many other factors involved. Furthermore, the proportionate value of the services of counsel is a special factor, under this particular statute, . . . ." In saying this, we do not interpret the statute to require some allowance of fees to the employee's attorney in every dual prosecution, the amount of such fee to depend upon the proportionate value of the services rendered. To do so would promote many evils. Instead of the needed cooperation between the attorneys for the employee and his employer, it would turn them into competitive adversaries. It would cause a "race to the courthouse" to file suit so as to give the winner the dominant role in the handling of the case. Confusion would reign as each attorney goes off on his own, as concerned about protecting or increasing his fee as in protecting and advancing the interests of his client. It would also place the employer or the insurance carrier in the position of having to pay two attorneys' fees, even if the attorneys it retained fully and adequately represented its interests.

We said in Gillotte v. Omaha Public Power Dist., *supra*, that the amendment herein involved to section 48-118, R. R. S. 1943, may well have been influenced by our decision in United Services Automobile Assn. v. Hills, 172 Neb. 128, 109 N. W. 2d 174. There we recognized the equitable principle that: ". . . where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees." We, therefore, hold that that portion of section 48-118, R. R. S. 1943, involved here, ordinarily does not apply to require a division of attorneys' fees where the subrogation interest of the employer or its insurance carrier is fully and adequately represented by its own counsel and where the services of the employee's attorney were not relied upon to effect the subrogation recovery.

The evidence in this case shows that Magnuson's investigation on behalf of St. Paul included an immediate inspection of the accident scene, having photographs taken of the railroad car and the faulty door, interviewing and obtaining statements from three witnesses, obtaining invoices to determine where the car was loaded, giving Pacific Fruit Express formal notice of St. Paul's subrogation claim, and obtaining medical reports and medical bills paid by St. Paul and furnishing them to St. Paul. By late March 1974, Magnuson had concluded that Pacific Fruit Express was legally liable for the accident and so informed its claim agent Caffrey. He later furnished Caffrey with computations on St. Paul's total claim, including the total future disability claim on a lump sum basis.

St. Paul contends that when Cobb was retained, Caffrey had already agreed to protect and pay its subrogation claim. Cobb denies this, contending that the questions of liability and extent of plaintiff's disability re-

sulting from the accident were not established at that time but only after and as a result of his own investigation. He testified that it was his further investigation which determined that Pacific Fruit Express employees had closed the door when it was loaded; that he cleared up discrepancies in medical reports as to diagnosis of plaintiff's injuries; and that he cleared up some questions regarding plaintiff's prior medical history.

We deem the dispute as to whether Pacific Fruit Express had already admitted liability when Cobb was retained to be irrelevant. At that point, some 15 months after the accident, St. Paul furnished Cobb with the results of Magnuson's investigation. St. Paul was ready to file suit but Cobb requested it hold off so he could investigate his client's interests. This included plaintiff's own economic loss, which was of no concern to St. Paul. Although counsel for St. Paul felt their client's subrogation claim was fully presented, they remained ready and willing to participate with Cobb in any further investigation or negotiation that Cobb felt was necessary. However, Cobb never contacted them further at any time until after he settled the claim. He did have telephone contacts with St. Paul, one to obtain a medical bill and another in an unsuccessful attempt to discount St. Paul's claim. Assuming Cobb's efforts did benefit St. Paul, it is evident that the plaintiff also benefited from Magnuson's investigation. When the required cooperation exists between counsel in this type of dual prosecution of claims, it is virtually inevitable that there will be mutual benefit to the parties, which, of itself, does not call for any division of attorneys' fees.

At no time did St. Paul's counsel terminate or abandon its representation or rely on or acquiesce in representation of their client by Cobb. Their representation of St. Paul remained active and viable throughout, culminating in their participation in the District Court hearing to approve the final lump sum settlement.

Under these circumstances, we conclude that St. Paul

had full and adequate representation from its own counsel and we affirm the District Court's denial of plaintiff's application for attorney's fees.

AFFIRMED.