491 N.W.2d 356 (1992)
Howard A. KAIMAN, Appellant,
v.
MERCY MIDLANDS MEDICAL AND DENTAL PLAN and Michael Lawler, Trustee, Appellees.
No. A-90-435.
Court of Appeals of Nebraska.
May 19, 1992.
*357 Jon B. Abbott, Omaha, for appellant.
Jon S. Reid, of Kennedy, Holland, DeLacy & Svoboda, Omaha, for appellees.
SIEVERS, C.J., and HANNON and WRIGHT, JJ.
SIEVERS, Chief Judge.
This appeal presents the first impression issue of whether a health care insurer who is reimbursed as the result of an injured employee's successful workers' compensation suit is obligated to pay attorney fees to the employee's attorney.
This case comes to us after the district court for Douglas County sustained the demurrer of Mercy Midlands Medical and Dental Plan and its trustee (Mercy Midlands). In reviewing an order sustaining a demurrer, an appellate court accepts the truth of facts well pled and the factual and legal inferences which may reasonably be deduced from such facts, but does not accept the conclusions of the pleader. Balfany v. Balfany, 239 Neb. 391, 476 N.W.2d 681 (1991). However, regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. City of Newman Grove v. Primrose, 240 Neb. 70, 480 N.W.2d 408 (1992).

BACKGROUND
The factual background, as revealed by plaintiff's petition, is that Patty Junge, an employee of Bergan Mercy Hospital, asserted that she had sustained an on-the-job injury. Her employer denied compensability. Junge, as an employee of Bergan Mercy, was covered by Mercy Midlands Medical and Dental Plan, a health maintenance organization (HMO). Mercy Midlands paid $13,554.38 to those who had provided medical services to Junge for her injury.
Junge retained counsel, who is the appellant herein. Suit was filed against Junge's employer in the Nebraska Workers' Compensation Court, and after two full hearings, that court entered an award in Junge's favor. As a result of the award in Junge's favor, Mercy Midlands received full reimbursement of the $13,554.38 it had paid to Junge's medical providers.
Junge's attorney, Kaiman, tendered a demand to Mercy Midlands for payment of a reasonable attorney fee, which he asserted was one-third of the amount reimbursed. The demand was denied, and as a result Kaiman filed suit against Mercy Midlands in the district court for Douglas County, seeking judgment against Mercy Midlands in the amount of $4,518.13.
Mercy Midlands filed a demurrer, which asserted that the district court had no jurisdiction over the subject matter and that the petition failed to state a cause of action because "Neb.Rev.Stat. § 48-101 et seq. (Reissue 1988), is the governing statutory authority and does not provide for attorneys fees in this type of case." On May 7, 1990, the district court sustained the demurrer without comment or opinion. Kaiman perfected his appeal and assigns the sustaining of the demurrer as error.
We must determine whether the petition states a cause of action, and if so, where jurisdiction lies.

IS A CAUSE OF ACTION STATED?
The issue of whether a cause of action is stated against an HMO by an attorney who has successfully presented an injured employee's workers' compensation claim against an employer with the result that an HMO is reimbursed is an issue of first impression in the State of Nebraska. We consider that an HMO is the equivalent of a health care insurer for purposes of our decision.

Nebraska's Common Fund Doctrine.
Kaiman argues that through his efforts, Mercy Midlands received full reimbursement of its payments on behalf of the injured employee Junge, and therefore under the common fund doctrine Mercy Midlands should bear a share of the cost of the recovery which was of direct and substantial benefit to Mercy Midlands. Mercy Midlands *358 asserts that the common fund doctrine does not apply and that Neb.Rev.Stat. § 48-120 (Reissue 1988) provides for direct reimbursement to a health care insurer without provision for attorney fees and thus no cause of action can be stated for attorney fees.
Kaiman asserts that the reimbursement of $13,554.38 to Mercy Midlands is a "common fund" and that he is owed a reasonable attorney fee of one-third, or $4,518.13, from Mercy Midlands. Under Nebraska law the common fund doctrine had its origination in United Services Automobile Assn. v. Hills, 172 Neb. 128, 109 N.W.2d 174 (1961), where the court recognized that ordinarily the right of a lawyer to compensation for his services depends upon a contract of employment, express or implied, but that there are exceptions. The applicable exception in that case was that an attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed compensation out of the whole fund where the services are rendered on behalf of and are of benefit to the common fund.
Thereafter, in Krause v. State Farm Mut. Auto. Ins. Co., 184 Neb. 588, 169 N.W.2d 601 (1969), the court once again followed and cited United Services Automobile Assn. v. Hills:
In awarding the insured's attorney an attorney's fee proportionate to the amount of services he had rendered in collecting the subrogation claim along with the personal injury claim against the tort-feasor, this court laid down the substantive principle of liability as follows: "The applicable rule is that where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees."
Krause, 184 Neb. at 591, 169 N.W.2d at 603.
These cases are not precisely on point, as they involve the recovery of a subrogation interest in a tort action. Nonetheless, the decisions show an unwillingness to allow the holder of the subrogated interest to have a "free ride" from the effort of the plaintiff and his or her attorney, who successfully bring the action which results in the creation of the fund which satisfies the subrogated interest. The concept that the employer or compensation insurer who benefits from third-party tort litigation must share in the expenses thereof is now codified in the Nebraska Workers' Compensation Act, Neb.Rev.Stat. § 48-118 (Reissue 1988). The Nebraska Supreme Court observed that it may well be that the 1963 amendments to § 48-118 were influenced by the Hills decision. Gillotte v. Omaha Public Power Dist., 189 Neb. 444, 203 N.W.2d 163 (1973), overruled on other grounds, Nekuda v. Waspi Trucking, Inc., 222 Neb. 806, 388 N.W.2d 438 (1986).
Certainly, the principle of the Hills case was followed by the language of § 48-118 which provides that where an injured employee brings an action against an alleged third-party tort-feasor, the employee shall be entitled to "deduct from any amount recovered the reasonable expenses of making such recovery, including a reasonable sum for attorney's fees, which expenses and attorney's fees shall be prorated to the amounts payable to the employer or his or her insurer under the above right of subrogation...." § 48-118. The quoted provision from § 48-118 specifically addresses payment when the employer fails to join in the making of the claim and the prosecution of the suit. However, the Nebraska Supreme Court has made it clear that an attorney fee is due under § 48-118 even if the holder of the subrogation interest joins in the suit with its own attorney if the employee's attorney is responsible for the recovery which results in reimbursement of the subrogation interest. See Schulz v. General Wholesale Co-op. Co., Inc., 195 Neb. 410, 238 N.W.2d 463 (1976) (fee denied on a finding that there was no abandonment of representation by the subrogation holder, St. Paul Fire and Marine Insurance Company, nor reliance upon or acquiescence *359 in representation of its interest by the employee's attorney).
The Nebraska Supreme Court, in Gillotte v. Omaha Public Power Dist., supra, extended the liability of the subrogated employer or workers' compensation carrier for attorney fees and costs to include not only what had been paid to date, but also to include the value of the future workers' compensation liability which was eliminated as a result of the recovery against the third party. Accordingly, not only was Gillotte an extension of United Services Automobile Assn. v. Hills, to the workers' compensation arena, it caused the common fund doctrine to be enlarged by including the value of discharged future benefits in the common fund.
Nekuda v. Waspi Trucking, Inc., supra, reaffirmed the essential holdings of Gillotte, but overruled it "only insofar as it required the immediate payment of the fees and expenses," with respect to future workers' compensation benefits which had not yet accrued or been paid by the employer. Nekuda, 222 Neb. at 817, 388 N.W.2d at 445. Payment of fees on future benefits is to be made as they accrue. Id.
In discussing allocation of attorney fees under § 48-118, the Supreme Court has observed that the court before which the underlying action is pending is in a better position to allocate fees according to the contribution of each attorney, but if the employer fails to join in the action, the court before which the recovery was made would simply deduct the attorney fee from the employer's subrogation interest "without as much of an allocation problem because the employee's counsel made the recovery possible." (Emphasis supplied.) Moyer v. Douglas & Lomason Co., 212 Neb. 680, 684, 325 N.W.2d 648, 650 (1982).
In view of the jurisdictional issue which is raised herein by this case and discussed hereafter, it is important to note that in Hills, Krause, Gillotte, Nekuda, and Moyer, the parties who had an interest in the recovery and against whom fees and expenses could be assessed were all parties to the litigation which established the common fund. Additionally, in our view these cases establish an inclination on the part of the Nebraska Supreme Court to ensure that one who benefits from litigation must also pay a share of the cost of obtaining that benefit. This inclination is well demonstrated by Hammond v. Nebraska Nat. Gas Co., 209 Neb. 616, 633-34, 309 N.W.2d 75, 85 (1981), wherein the court stated:
"If the appellant had employed its own attorney and had actively participated in the action against Purcell, it could not fairly have been compelled to contribute to Howard's fee. [Citation omitted.] But when the insurance company has benefited from the work done by the insured's attorney there is no inequity in requiring it to bear its fair share of the collection expense."
(Emphasis omitted.) (Quoting with approval Wash. Fire & Marine Ins. Co. v. Hammett, 237 Ark. 954, 377 S.W.2d 811 (1964).)

Other Jurisdictions.
We have undertaken to examine the status of the law on this issue in other jurisdictions for the insight that such a survey might provide. The issue has been addressed in only a handful of jurisdictions.
In Quinn v. State of California, 15 Cal.3d 162, 539 P.2d 761, 124 Cal.Rptr. 1 (1975), a negligence action by an injured employee against a negligent third party, the court considered whether attorney fees should be apportioned between the employee and the employer who received reimbursement as a result of the successful third-party action. In the course of that decision, the Supreme Court of California developed the useful nomenclature of active litigant for the employee and passive beneficiary for the employer or other reimbursed party. The California court observed that American courts, in contrast to English courts, have never awarded attorney fees as a routine component of costs except in one well-established instance: the common fund doctrine. The court defined that doctrine as follows: "[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the *360 litigation costs." Id. at 167, 539 P.2d at 764, 124 Cal.Rptr. at 4.
In California, the common fund doctrine is referred to as apportionment, and in Quinn, supra, the rationale was explained:
An active litigant has, by bringing and winning this lawsuit, created a fund upon which a nonparticipant in the litigation can draw in order to relieve himself of a legal obligation he would otherwise bear; the passive beneficiary thus necessarily benefits from plaintiff's efforts in bringing suit. The employer has contributed neither time, effort, nor money to the now-successful action; he thus seeks to enjoy the benefits of the suit without contributing to its cost.
Id. at 168-69, 539 P.2d at 765, 124 Cal.Rptr. at 5.
The court in Quinn concluded by saying: He [the employer] asks us to construe a statute so as to require the injured worker to pay the lawyer's entire charge for a recovery, part of which will benefit only the employer. Yet if the employer receives his fair share of the recovery, he must bear his fair share of the cost of the recovery.
Id. at 176, 539 P.2d at 770, 124 Cal.Rptr. at 10.
Later, the California Court of Appeals faced the precise issue before us in Kaiser Foundation v. Workers' Compensation, Etc., 83 Cal.App.3d 413, 148 Cal.Rptr. 54 (1978). In this case, the injured employee filed for workers' compensation benefits, and under California procedure, Kaiser, which had previously paid for the employee's medical services, filed a lien for $365.80. Kaiser was not represented by an attorney, and the award in the employee's favor reimbursed Kaiser its $365.80 but assessed an attorney fee of $50. The court found that there was no statutory direction as was present in Quinn, and it was not a third-party suit. However, other than these two differences, the court considered the matters essentially identical. The California court then said:
The applicant is an "active litigant" whose attorney did all the work underlying her recovery. Kaiser is a "passive beneficiary" for whom the work produced a parallel recovery.
Disputing this characterization of the parties, Kaiser argues that its "recovery was assured by operation of law and not by the applicant's attorney's efforts" because (1) the referee could be relied upon to raise and decide the issue of self-procured medical treatment in all events and, (2) once he did, Kaiser's recovery under its lien claim "would follow by operation of law." This argument rests upon a premise that Kaiser's right to be reimbursed under its lien claim would somehow prove itself. The premise fails.
Kaiser, 83 Cal.App.3d at 417, 148 Cal.Rptr. at 56-57.
The court in Kaiser found that the premise failed for several reasons: (1) The reimbursement of Kaiser for the employee's self-procured medical treatment was "compensation" awarded to her; (2) there was a real issue as to whether the treatment was related to the compensable injury and that issue was resolved in favor of the applicant as a result of the work of her attorney; and (3) the recovery of Kaiser was contingent upon the result achieved by the attorney. Accordingly, the court in Kaiser found that the above factors made Kaiser a passive beneficiary of the successful efforts by an active litigant. As a result, the California court extended the rule of Quinn to reimbursement of a medical provider by an injured employee's successful workers' compensation claim, observing that it was an equitable rule and a variation of the maxim that "one `who takes the benefit must bear the burden.'" Id. at 418, 148 Cal.Rptr. at 57.
Minnesota has also considered the issue, but has held that the attorney representing a successful active litigant who obtains workers' compensation benefits which result in a health carrier's reimbursement is not entitled to fees. Johnson v. Blue Cross & Blue Shield of Minn., 329 N.W.2d 49 (Minn.1983).
In Johnson, the plaintiff was awarded $2,185 for temporary total disability, and Blue Cross and Blue Shield received $4,025 for reimbursement of medical bills it had *361 previously paid. In framing the question, the court observed that Blue Cross had reaped the benefit of the attorney's services, for which the attorney, in large part, had not been paid and that the issue was "whether, in equity and fairness, Blue Cross should share its recovery with the attorney who made it possible." Id. at 52. The Minnesota court observed that the health carrier has no independent right to initiate the petition for reimbursement (although it can intervene). The court also observed that workers' compensation proceedings, once commenced, must be conducted so as to protect the health carrier's right of reimbursement. Id., citing Repo v. Capitol Elevator Co., 312 Minn. 364, 252 N.W.2d 248 (1977).
A Minnesota statute requires that if a dispute exists about compensability, a health insurer shall pay medical costs, and if the injury is subsequently determined to be compensable, the workers' compensation insurer shall be ordered to reimburse the health insurer. Minn.Stat. § 176.191 (1980). As a result of this statute, the court in Johnson, supra, found that the health carrier is obligated to make payment while the underlying workers' compensation liability is being disputed and in return for undertaking this responsibility, the health carrier is permitted a relatively passive role in the workers' compensation litigation. Thus, the Minnesota court held that in this context it is not unfair that Blue Cross be entitled to full reimbursement, nor is it unfair to deny the attorney compensation from Blue Cross for services that essentially had to be performed anyway in representing the client/employee. Accordingly, the Minnesota court in Johnson held that "[t]here is nothing unfair about the health carrier's recovering full reimbursement for medical costs it has paid without having to share that recovery with the employee's attorney." Johnson, 329 N.W.2d at 53.
Johnson is premised upon the existence of Minn.Stat. § 176.191 (1980), previously discussed herein. However, Nebraska does not have a similar statute. Thus, Nebraska lacks similar legislative policy, as the health insurance carrier is not statutorily obligated to make the payment in the event of a dispute over the underlying workers' compensation liability and, in exchange, receive full reimbursement. Although the Minnesota court concluded in Johnson, 329 N.W.2d at 53, that Blue Cross and Blue Shield "has been enriched, but not unjustly," other passive beneficiaries are treated differently.
In Minnesota, the passive beneficiary of the injured employee's active pursuit of his or her compensation claim must share the cost of recovery if the passive beneficiary is a long-term disability carrier or a short-term disability carrier. Mann v. Unity Medical Center/Health Cent., 442 N.W.2d 291 (Minn.1989). When the passive beneficiary has paid unemployment benefits, there is sharing of attorney fees, Edquist v. Browning-Ferris, 380 N.W.2d 787 (Minn.1986), as well as when the passive beneficiary has paid accident and sickness benefits for an employee under a collective bargaining agreement, Ransom v. Ford Motor Co., 472 N.W.2d 134 (Minn.1991). Thus, Minnesota clearly approves the concept of sharing the cost of the litigation among those who benefit, and in fact this type of fee has acquired the label of "Edquist fees." Nonetheless, in Minnesota, a health care insurer is allowed reimbursement without any cost on the basis of the statutory provision described in Johnson, supra. The statutory provision which underpins the exception of Johnson is, in our view, merely a codification of a health care insurer's already existing contractual duty to pay medical bills for an injured employee who has been denied workers' compensation benefits. Accordingly, we do not find the reasoning and result of the Minnesota Supreme Court in Johnson persuasive. Our rejection of Johnson is further buttressed by the assessment of fees against other passive beneficiaries of a successful workers' compensation action. See, Mann, Edquist, and Ransom. In our view, Minnesota allows disparate treatment among passive beneficiaries, which we decline to adopt, nor do we follow Johnson.
In Boyce v. Grand Rapids Paving, 117 Mich.App. 546, 324 N.W.2d 28 (1982), the *362 court considered the issue of whether a hospital was responsible for paying any portion of attorney fees to the plaintiff's counsel for services in obtaining a workers' compensation award through which the hospital received a share of the recovery. Payment of fees was summarily rejected because there was no employment agreement between the hospital and the lawyer. In Nebraska, the common fund doctrine specifically operates in the absence of direct employment of the attorney by the passive beneficiary. Thus, Boyce is clearly distinguishable from existing Nebraska law on the common fund doctrine.
The Court of Appeals of Arkansas, in Holiday Inn-West v. Coleman, 31 Ark. App. 224, 792 S.W.2d 345 (1990), held that the attorney fee statute under the Arkansas Workers' Compensation Act did not authorize the commission to direct the compensation carrier to withhold proportionate amounts due to medical providers for payment of the claimant's portion of the attorney fee. However, Arkansas has a statute regulating attorney fees in workers' compensation cases which provides that one-half of the attorney fee is to be paid by the employer or carrier, in addition to compensation awarded, and one-half by the injured employee "out of compensation payable to them." Ark.Code Ann. § 11-9-715(a)(2)(B) (1987). The Arkansas statute is obviously unique and completely dissimilar to Nebraska law, and therefore the Holiday Inn decision is not helpful here.
Alabama appears to be the final jurisdiction to have considered the issue. In Day v. Ramada Inn South, 527 So.2d 130 (Ala. Civ.App.1987), the court considered the issue of whether the plaintiff was entitled to an attorney fee from the health care insurers under the compensation statutes, or in the alternative under a common fund theory. Alabama's applicable statute, which is similar to Neb.Rev.Stat. § 48-108 (Reissue 1988), provided:
"No part of the compensation payable under this article shall be paid to attorneys for the plaintiff for legal services unless, upon the application of the plaintiff to a judge of the circuit court, such judge shall order or approve of the employment of an attorney by the plaintiff, and in such event the judge upon the hearing of the complaint for compensation, shall fix the fee of the attorney for the plaintiff for his legal services and the manner of its payment, but such fee shall not exceed 15 percent of the compensation awarded or paid."
Day, 527 So.2d at 131-32.
In its analysis, the Alabama court started with the proposition that attorney fees are recoverable only (1) when authorized by statute, (2) when a contract exists, or (3) in equitable proceedings if the efforts of the attorney have created a "common fund." The court stated there was no statutory authorization, nor did the record reveal a contract between Henley (the attorney) and The Travelers insurance company or the medical care providers. Accordingly, the court said that Henley was left with the common fund theory. The Alabama court set up five requirements for the common fund doctrine:
First, there must be a fund from which to pay the attorney, and this fund must be one which the attorney's services benefited. Second, the benefit rendered must be direct rather than incidental. Third, the party seeking fees and the party to be charged must have had a common interest in the fund. Fourth, the proceedings must be equitable in nature. Fifth, the fund must be within the control of the court.
Id. at 132.
In applying these requirements in Day, supra, the court initially found that since Aetna paid the medical providers directly, there was no fund created by or under the control of the court from which disbursement could or would be made by the court. Secondly, the court found that Henley's actions were for the benefit of his client and that the benefits derived from those actions by the medical care providers were only incidental to the purpose of Henley's representation of the injured worker. Accordingly, the second requirement was not met. The court said that both the party seeking the fees and the party charged *363 must have an interest in the fund, and since the injured plaintiff was mainly interested in getting her medical bills paid rather than obtaining the money herself, the third requirement was not met.
Without discussing the fourth and fifth requirements, the Alabama court stated that "[i]t is clear from the record that Henley does not meet four of the requirements necessary under the common fund theory." Id. at 133. Accordingly, since the common fund doctrine failed and Henley had not been employed by the health care insurers, no fee was awarded.
Alabama's version of the common fund doctrine, and its application thereof, is materially different from Nebraska's. There is no Nebraska requirement that the court actually handle the money, as Day seems to require. The Nebraska cases do not focus on the active litigant's intent but, rather, on whether the passive beneficiary has gained from the active litigant's effort. It goes without saying that money which must be reimbursed would be considered incidental by the employee. However, the incidental nature of that reimbursement to the employee does not address in any meaningful way the issue of whether a passive beneficiary should receive full reimbursement at the expense of the active litigant who must undergo the effort, stress, and expense of the litigation. We conclude that Day is contrary to the common fund doctrine as defined and applied in Nebraska. Thus, we likewise decline to follow Day.

Conclusion.
Our analysis of Nebraska law, as well as that from other jurisdictions, leads us to hold that Kaiman has stated a cause of action against Mercy Midlands for recovery of a reasonable attorney fee in the district court.
Clearly, the efforts of the injured employee Junge and her attorney Kaiman have resulted in a direct and substantial benefit to Mercy Midlands. Had Junge and her attorney not contested the denial of the compensability of her injury, Mercy Midlands would have contractually paid $13,554.38 on Junge's behalf without recourse or reimbursement. However, under the facts as alleged, Junge and her attorney, Kaiman, through the litigation process involving two trials, succeeded in establishing the compensability of her injury. As a result, a common fund was created, and the passive beneficiary received a direct, substantial, and measurable benefit. In our view, the notion that the recipient of this benefit must bear some share of the cost of its creation is strongly supported by Nebraska precedent such as United Services Automobile Assn. v. Hills, 172 Neb. 128, 109 N.W.2d 174 (1961), and Krause v. State Farm Mut. Auto. Ins. Co., 184 Neb. 588, 169 N.W.2d 601 (1969).
In addition, there is a statutory mandate in § 48-118 supporting the common fund doctrine. The strength of the common fund doctrine in Nebraska is further evidenced by the Supreme Court's decisions in Gillotte v. Omaha Public Power Dist., 189 Neb. 444, 203 N.W.2d 163 (1973), and Nekuda v. Waspi Trucking, Inc., 222 Neb. 806, 388 N.W.2d 438 (1986).
We cannot find, nor are we able to articulate, any logical, fair, or equitable reason why a health care insurer who receives reimbursement should not share in the cost of obtaining that reimbursement.
In holding that the common fund doctrine applies when a health care insurer is reimbursed, in whole or in part, as a result of a successful workers' compensation action, we are doing so on the basis that the health care insurer should properly share, on a reasonable and equitable basis, in the cost of the workers' compensation litigation which resulted in the reimbursement. In our view, the common fund doctrine is grounded in the notion of cost sharing, and accordingly, our decision is not designed to enable attorneys to increase the total amount they are paid for litigating workers' compensation cases. Rather, our decision allows an injured worker to use the common fund doctrine to shift an appropriate share of the cost of the litigation to a health care insurer who directly and substantially benefits by the litigation through reimbursement.

*364 JURISDICTION
Kaiman claims that the district court has jurisdiction to determine whether he is entitled to attorney fees from Mercy Midlands. Mercy Midlands asserts that the district court has no jurisdiction.
The Nebraska Workers' Compensation Act, § 48-108, provides in relevant part:
No claim or agreement for legal services or disbursements in support of any demand made or suit brought under the Nebraska Workers' Compensation Act shall be an enforceable lien against the amounts to be paid as damages or compensation or be valid or binding in any other respect, unless the same be approved in writing by the judge presiding at the trial or, in case of settlement without trial, by a judge of the Nebraska Workers' Compensation Court. After such approval, if notice in writing be given the defendant of such claim or agreement for legal services and disbursements, the same shall be a lien against any amount thereafter to be paid as damages or compensation. When the employee's compensation is payable by the employer in periodical installments, the compensation court shall fix, at the time of approval, the proportion of each installment to be paid on account of legal services and disbursements.
In its brief, Mercy Midlands maintains that this statute provides the "exclusive procedure for obtaining attorney fees in a worker's compensation case." Brief for appellees at 7-8. Mercy Midlands correctly asserts that Kaiman has not pled facts to show compliance with § 48-108.
The jurisdiction issue cannot be resolved without also considering § 48-120, which provides in relevant part:
The Nebraska Workers' Compensation Court shall order the employer to make payment directly to the supplier of any services provided for in this section or reimbursement to anyone who has made any payment to the supplier for services provided in this section. No such supplier or payor may be made or become a party to any action before the compensation court.

(Emphasis supplied.)
This statute clearly gives the Workers' Compensation Court authority to order reimbursement of insurance payors or HMO's such as Mercy Midlands, when they have made payment to medical providers on behalf of an injured employee, such as Junge, who is ultimately determined by the compensation court to be entitled to workers' compensation benefits, including medical expenses. The above-quoted provision from § 48-120 was the legislative response to Spiker v. John Day Co., 201 Neb. 503, 270 N.W.2d 300 (1978), where the court reversed an award of reimbursement to the Veteran's Administration and Medicare for services rendered to an injured employee on the ground that they were not parties to the action and that the injured plaintiff had no claim for reimbursement for services furnished by the Veteran's Administration and Medicare. The Supreme Court held in Spiker that the Workers' Compensation Court had no jurisdiction to determine any right of reimbursement that either the Veteran's Administration or Medicare might have as against the defendants. The statutory provision enacted thereafter, and quoted above, gives the compensation court jurisdiction to order reimbursement, but specifically prevents a supplier or payor from being a party "to any action before the compensation court." (At oral argument, the parties agreed that Mercy Midlands was not a party to the underlying workers' compensation action.)
Section 48-120, including the amendment which occurred as a result of Spiker, is silent on the issue of assessment of attorney fees and costs when reimbursement is ordered. In Thomas v. Omega Re-Bar, Inc., 234 Neb. 449, 451 N.W.2d 396 (1990), the Supreme Court stated that the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute. In Thomas, it was held that there was no specific grant of authority to the Workers' Compensation Court to determine insurance coverage disputes and that none of the statutes in the Workers' Compensation *365 Act provided the Workers' Compensation Court with subject matter jurisdiction to hear insurance coverage disputes. The court in Thomas held:
When the right of an employee to an award is not at stake, many tribunals disavow jurisdiction.... 4 A. Larson, The Law of Workmen's Compensation § 92.42 (1989). Since there is no express grant of statutory authority, we hold that the Nebraska Workers' Compensation Court does not possess subject matter jurisdiction to resolve insurance coverage disputes.
Thomas, 234 Neb. at 453, 451 N.W.2d at 399.
It is clear that Mercy Midlands could not be made nor become a party in the Workers' Compensation Court. In other words, under § 48-120 Junge could not have sued Mercy Midlands in the underlying workers' compensation action to obtain fee sharing, nor could Mercy Midlands intervene in that action to assert its right to reimbursement.
On one hand, Mercy Midlands asserts that under § 48-108 only the Workers' Compensation Court can determine the issue of any fees it might owe Kaiman. On the other hand, § 48-120, Mercy Midlands as a "payor" cannot be "a party to any action before the compensation court." (Emphasis supplied.) We assume that Mercy Midlands, and others similarly situated, would want the right to be heard on the issue of any attorney fee that it might be ordered to pay. We hold that fundamental due process requires that Mercy Midlands, as well as any other similarly situated payor or supplier, have a forum in which to be heard before it can be ordered to pay any attorney fees or costs. Due process minimally requires that absent countervailing state interest of overriding significance, persons forced to settle claims of right and duty through the judicial process must be given a meaningful opportunity to be heard. Carroll v. Moore, 228 Neb. 561, 423 N.W.2d 757 (1988), cert. denied 488 U.S. 1019, 109 S.Ct. 817, 102 L.Ed.2d 807 (1989). An opportunity to be heard, to be meaningful, requires a court in which to be heard.
If Mercy Midlands' argument that § 48-108 provides the exclusive procedure for obtaining attorney fees is correct, then there is no court with jurisdiction. To illustrate, if Kaiman makes the claim against Mercy Midlands in the Workers' Compensation Court, Mercy Midlands cannot be a party before the Workers' Compensation Court because of the express exclusion in § 48-120. Thus, a judgment or order rendered against Mercy Midlands for attorney fees without an opportunity to be heard would be a denial of the most fundamental concepts of due process. On the other hand, when Kaiman asserts the claim in district court, Mercy Midlands demurs on the ground that § 48-108 gives the compensation court exclusive jurisdiction over attorney fee matters arising out of workers' compensation actions. However, because of § 48-120, the compensation court can never acquire jurisdiction over a payor such as Mercy Midlands.
Resolution of this apparent dilemma requires examination of § 48-108, which provides:
No claim or agreement for legal services or disbursements in support of any demand made or suit brought under the Nebraska Workers' Compensation Act shall be an enforceable lien against the amounts to be paid as damages or compensation or be valid or binding in any other respect, unless the same be approved in writing by the judge presiding at the trial or, in case of settlement without trial, by a judge of the Nebraska Workers' Compensation Court. After such approval, if notice in writing be given the defendant of such claim or agreement for legal services and disbursements, the same shall be a lien against any amount thereafter to be paid as damages or compensation. When the employee's compensation is payable by the employer in periodical installments, the compensation court shall fix, at the time of approval, the proportion of each installment to be paid on account of legal services and disbursements.
*366 The language of this statute has remained essentially the same since the passage of the Nebraska Workers' Compensation Act in 1913, except that in its original form, it provided that fees in the event of settlement without trial would be approved by the district court of the district in which the issue arose. As is well known, the role of the district court in workers' compensation matters has now been reduced to approving lump-sum settlements if they have previously been approved by the Nebraska Workers' Compensation Court. See Neb. Rev.Stat. § 48-139 (Reissue 1988).
The first time § 48-108 (then entitled Comp.St. § 3031 (1922)) was construed was in Dysart v. Yeiser, 110 Neb. 65, 192 N.W. 953 (1923), aff'd 267 U.S. 540, 45 S.Ct. 399, 69 L.Ed. 775 (1925). The facts of Dysart were that Anna Burkmann's son, while in the course of his employment for Blue Taxicab Company, was killed in a collision with an Omaha & Council Bluffs Street Railway Company streetcar. Yeiser was an attorney employed by the administratrix of the estate to prosecute a negligence action against the railway company, as well as by Mrs. Burkmann to pursue the workers' compensation case. Yeiser contended that his contract was to pursue both cases and receive a fee of 40 percent of the amount recovered. Mrs. Burkmann contended that the fee agreement was a contingent fee of 40 percent in the negligence action against the railway company, but only such fee in the compensation case as the court might allow. The evidence revealed that the compensation case was settled for a lump sum of $3,974, and the court allowed Yeiser the sum of $250 as an attorney fee, but Yeiser retained a total of $870 out of the settlement, or $620 in excess of the court's allowance. The separate lawsuit against the railway company was still pending in the district court, and this case made its way to the Supreme Court on appeal from an order of the district court directing that Yeiser refund $620 to his client. The statute was determined to be dispositive of the case. Therefore, the court found it unnecessary to determine the precise terms of attorney Yeiser's contract with his clients.
In construing the statute, which is identical in all material respects to that before us in the present-day version of § 48-108, the court initially observed that "[a] careful examination of the statute quoted shows that it relates to claims or agreements for legal services and disbursements, as well as to liens for attorney's fees, in actions or claims arising under the workmen's compensation act." Dysart, 110 Neb. at 68, 192 N.W. at 954. The court in Dysart further held that
the legislature intended to restrict and limit the amount an attorney could lawfully charge or contract for as compensation for legal services or disbursements, in demands or suits arising under the workmen's compensation act, to such fee or sum as should be approved in writing by the district judge. It necessarily follows that an attorney cannot enforce against a claimant for compensation any claim or agreement for attorney's fees, in a suit or demand brought under the provisions of the compensation act for an amount in excess of that which is approved by the district judge.
(Emphasis supplied.) Id. at 68, 192 N.W. at 954-55.
Accordingly, although the court in Dysart initially painted with a broad brush when it spoke of claims or agreements for legal services "arising under the workmen's compensation act," the above holding narrows the operation of the statute to claims for attorney fees against "a claimant for compensation."
Yeiser advanced a constitutional argument that this statute violated the provisions of the U.S. Constitution which guarantee property rights and due process. Accordingly, the court in Dysart looked to the reasonableness of the regulation of attorney fees. In doing so, the court observed that the persons who come under the compensation act "are not possessed of large means, but are dependent upon their earnings for the support of themselves and their families." Id. at 69, 192 N.W. at 955. The court in Dysart then articulated the fundamental purpose of the statute, as well as its basis as a reasonable regulation:

*367 If the earning power of the bread-winner is destroyed or greatly impaired by an injury, he must look to the compensation provided by the statute for the support of himself and his family, and, if this compensation may be depleted by an improvident or unreasonable contract for legal services, he and his dependents are likely to become public charges. It is in their interest, and the interest of the public as well, that they should be protected from contracts or charges for attorney's fees that are not reasonable. The statute does not fix an arbitrary charge, but leaves the amount to be determined and fixed by the judge.
Id.
Based on Dysart, we hold that § 48-108 limits the Nebraska Workers' Compensation Court's regulation of attorney fees and disbursements matters to those which arise between the injured worker and the attorney representing the injured worker. Therefore, we further hold that § 48-108 does not give the Nebraska Workers' Compensation Court subject matter jurisdiction to determine whether a health care insurer or HMO is obligated to share in the cost of obtaining reimbursement when the injured worker successfully asserts a claim for workers' compensation benefits.
In reaching this holding, we are not unmindful of Moyer v. Douglas & Lomason Co., 212 Neb. 680, 325 N.W.2d 648 (1982), where the court considered a jurisdictional issue arising under § 48-118, the third-party subrogation statute in the Workers' Compensation Act. In Moyer, an employee was injured while operating a machine for her employer, Douglas & Lomason. A third-party lawsuit was filed against the manufacturer of the machine in the U.S. District Court for the District of Nebraska. A settlement was reached with the third-party defendant, and as part of that settlement, Douglas & Lomason's subrogation interest was reduced to $7,500. Following completion of the settlement with the third party, counsel for the injured employee transmitted the subrogation recovery to Douglas & Lomason less an attorney fee of one-third and 15 percent of the expenses. Douglas & Lomason demanded repayment of the deducted amount, and the attorney countered by filing a declaratory judgment action in the district court for Platte County, where judgment was ultimately rendered in favor of Douglas & Lomason. The appeal followed, and the Nebraska Supreme Court held that the district court for Platte County did not acquire jurisdiction to resolve the dispute between the attorney and Douglas & Lomason.
In reaching its conclusion that the district court for Platte County had no jurisdiction, the court in Moyer held that the proper court to apportion fees and expenses was the U.S. District Court for the District of Nebraska, which was the forum at the time of the settlement. The court further observed that the U.S. District Court was in a unique position to know the extent of participation in the recovery by both counsel and that any other court which attempted to review, evaluate, and apportion the contributions of the employee's attorney and the attorney representing the employer, which was made a party defendant in the third-party action pursuant to § 48-118, would be faced with a nearly impossible task. As a result, the court held that "under § 48-118, where an action is filed before a particular court and prosecuted to a final conclusion, whether by settlement or judgment, that court alone has jurisdiction to resolve any controversy relating to the division of fees and expenses. To hold otherwise would result in unseemly forum shopping." Moyer, 212 Neb. at 686, 325 N.W.2d at 651.
The obvious distinction between Moyer, which was brought under § 48-118, and this case is that under § 48-118 it is mandatory that the employer or insurer from whom fee sharing is sought must be joined as a party to the original lawsuit. Accordingly, when attorney Moyer sought a fee for recovering the employer's subrogation interest, Douglas & Lomason was already a named party with the right to participate in the underlying action, as well as to be heard on any fee issues. As we have already observed, under § 48-120, a health *368 care insurer cannot be a party to the underlying workers' compensation case which, if successful, results in the reimbursement of the health care insurer, nor can it be later joined after a successful result, due to the absolute prohibition of § 48-120. Accordingly, Moyer is distinguishable, even though we recognize the wisdom of having the court which heard the workers' compensation case also determine attorney fee issues. However, the statutory bar of § 48-120, as well as due process requirements, prevents the compensation court from having jurisdiction over Mercy Midlands, and thus Kaiman cannot assert his claim against Mercy Midlands in the Nebraska Workers' Compensation Court.
Article V, § 9, of the Constitution of the State of Nebraska provides that the district courts shall have common-law jurisdiction, and such other jurisdiction as the Legislature may provide. In addition to the jurisdiction specifically conferred by the Legislature, the district courts have the broad and general jurisdiction conferred by the Constitution. See State, ex rel. Wright, v. Barney, 133 Neb. 676, 276 N.W. 676 (1937).
Accordingly, jurisdiction is lacking in the Nebraska Workers' Compensation Court to determine an attorney fee and cost sharing claim when a health care insurer is reimbursed in an injured employee's action for workers' compensation benefits. Since jurisdiction cannot lie in the Workers' Compensation Court, it must necessarily be found in the district court.

CONCLUSION
We hold that Kaiman's petition against Mercy Midlands states a cause of action and that the district court has jurisdiction of the cause of action. Accordingly, it was error to sustain the demurrer, and we reverse the judgment of the district court for Douglas County and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.