LORI NEUMANN, APPELLEE AND CROSS-APPELLANT, V.
AMERICAN FAMILY INSURANCE, APPELLANT AND CROSS-APPELLEE.

563 N.W.2d 791

Filed May 13, 1997.    No. A-96-207.

Eugene L. Hillman and Patricia McCormack, of McCormack, Cooney, Hillman & Elder, for appellant.

Joseph B. Muller, of Law Offices of Ronald J. Palagi, P.C., for appellee.

IRWIN, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

This suit is a declaratory judgment action concerning the entitlement, under Neb. Rev. Stat. § 48-118 (Reissue 1993), of the parties to moneys obtained from a settlement with a third-party tort-feasor. The principal issue is whether a person injured during the course of her employment and who settles a third-party liability claim must receive full compensation for her injuries before a subrogated workers' compensation insurance carrier is entitled to share in the settlement proceeds paid by the third-party tort-feasor. A secondary issue is the compensation carrier's liability to the injured party's attorney for fees and expenses, in the event the compensation carrier is entitled to any of the settlement proceeds.

## FACTUAL BACKGROUND

On January 15, 1991, Lori Neumann, an employee of Simmonds Restaurant Management, was traveling west on Link 28 K in Omaha, Nebraska, when she was struck by an automobile driven by Lori A. Mazour. Neumann's car came to rest in the center lane of Link 28 K where it was struck again from the rear about 25 minutes later. The second collision, involving Aaron T. Bush, caused most, if not all, of Neumann's injuries. Both collisions arose out of and were in the course of Neumann's employment and are compensable under the Nebraska Workers' Compensation Act. Neumann's injuries and

damages included disabling lower back injuries requiring extensive surgery, permanent limitation of motion and functional disability, significant pain and suffering, and the loss of earning capacity.

American Family Insurance, as the workers' compensation carrier for Neumann's employer, Simmonds Restaurant Management, paid benefits totaling $140,766.46 ($112,227.65 in medical expenses and $28,538.81 in temporary total disability payments). Neumann's workers' compensation claim remains open, and payment of additional benefits in the future appears virtually certain.

Neumann and American Family agreed to settlement of the liability claims against the third-party tort-feasors. American Family was not involved in the negotiations or the prosecution of the claims and at no time retained an attorney separate from Neumann's. IMT Insurance Company, the liability carrier for Bush (the driver of the second car), agreed to pay the liability limit on Bush's coverage of $100,000. Farmers Mutual of Nebraska, the liability carrier for Mazour (the driver of the first car), agreed to pay $20,000, with $2,000 thereof to be paid to Neumann's husband, Kevin, on his claim for loss of consortium. Neumann and American Family stipulated that the $120,000 was all that could reasonably be obtained from the tort-feasors and their insurers. The parties further stipulated that the $120,000 was insufficient to compensate Neumann for her injuries and damages. Finally, it was stipulated that Neumann, through her counsel, the Law Offices of Ronald J. Palagi, P.C., conducted the negotiations with the liability carriers, by reason of which Neumann's attorneys claimed an attorney fee of $39,333 and out-of-pocket expenses in the amount of $1,241.62; American Family denied these claims.

## PROCEDURAL BACKGROUND

Neumann petitioned the district court for Douglas County for a declaratory judgment concerning the rights and liabilities of the parties (Neumann and American Family) with respect to the settlement proceeds of $120,000. A "Stipulation of Facts" was prepared and submitted by the parties, and both parties filed motions for summary judgment, contending they were entitled

to the entire $120,000. These motions were overruled, and a trial was held before the district court. The trial court determined that there should be an "equitable division" of the proceeds and ordered that the remaining $118,000 be divided, $92,000 going to Neumann and $26,000 to American Family for its workers' compensation subrogation claim. The district court denied the claim of Neumann's counsel for attorney fees and out-of-pocket expenses. Both parties moved for a new trial, which the trial court denied. This appeal and cross-appeal followed.

## ASSIGNMENTS OF ERROR

Both parties assert that the district court erred in failing to grant their motions for summary judgment and in apportioning the funds from the third-party settlement with the tort-feasors. Both parties claim that they are entitled to the entire $118,000. Neumann also asserts that the district court erred in denying her an award of attorney fees and expenses and that if American Family receives any recovery, attorney fees and costs should be assessed against American Family.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Anderson v. Nashua Corp.*, 251 Neb. 833, 560 N.W.2d 446 (1997); *Burke v. Blue Cross Blue Shield*, 251 Neb. 607, 558 N.W.2d 577 (1997).

When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independent from the conclusion reached by the trial court with regard to that question. *Burke v. Blue Cross Blue Shield, supra*; *Farm Bureau Ins. Co. v. Bierschenk*, 250 Neb. 146, 548 N.W.2d 322 (1996).

Determinations of factual issues in a declaratory judgment action will not be disturbed on appeal unless they are clearly wrong. *Woodmen of the World Life Ins. Soc. v. Yelich*, 250 Neb. 345, 549 N.W.2d 172 (1996); *Columbia Nat. Ins. v. Pacesetter Homes*, 248 Neb. 1, 532 N.W.2d 1 (1995).

## ANALYSIS

This case squarely presents the question of whether a workers' compensation insurance carrier claiming a right of subrogation under § 48-118 is entitled to all of the money from a tort settlement, even though the tort settlement is inadequate to fully compensate the injured employee for her damages. In other words, even though the injured employee is not "made whole" by the tort-feasor, is the compensation carrier still entitled to recover all of the workers' compensation benefits paid to the employee? The evidence is that the payments made by the compensation carrier exceed the amount of the tort settlement, but there has been no judicial determination as to the amount needed to fully compensate Neumann for her injuries.

*Right of Subrogation.*

Both American Family and Neumann argue that they are entitled to the entire $118,000 settlement. The district court found that it was "required to make an equitable division of proceeds due to the fact that full recovery was impossible." Other than noting that Neumann had received permanent injuries and that she was a 31-year-old mother of three who had experienced "much pain and suffering in the past and will continue to" do so, the trial court did not articulate how it arrived at its division of $92,000 to Neumann and $26,000 to American Family.

Section 48-118 provides:

> When a third person is liable to the employee or to the dependents, for the injury or death, *the employer shall be subrogated to the right of the employee or to the dependents against such third person,* and the recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his or her dependents should have been entitled to recover. *Any recovery by the employer against such third person, in excess of the compensation paid by the employer after deducting the expenses of making such recovery, shall be paid forthwith to the employee or to the dependents . . . .*

(Emphasis supplied.)

▆▆▆ Subrogation is substitution of one person who is not a volunteer, the subrogee (American Family), for another, the subrogor (Neumann), as the result of the subrogee's payment of a debt owed to the subrogor so that the subrogee succeeds to the subrogor's right to recover the amount paid by the subrogee. *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993). A party's right to subrogate may arise under principles of equity, may be contractual, or may be set out in statute. See *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993). Generally, under principles of equity, subrogation is unavailable until the debt owed to a subrogor has been paid in full. *Id.*

*Frohlich*, involving a subrogation claim by an insurance company which had paid its medical payments limit, contains a comprehensive treatment of the question posed by the court: "Is an insured's full compensation for a loss a prerequisite to subrogation?" *Id.* at 120, 498 N.W.2d at 80. After reviewing a substantial body of appellate literature, the Supreme Court concluded that full compensation was typically required in cases where an insurer's right to recover was premised upon a clause in an insurance policy. The rationale for this rule, according to the *Frohlich* court, was based on principles of equity: An insurer is entitled to subrogation only when the injured party has received, or would receive, a double payment by virtue of a recovery from the tort-feasor for all or part of damages which are also covered by the policy. The *Frohlich* court said that another reason for requiring full compensation for the injured party is that the insurer has collected a premium for the risk it assumes. See *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982). Presumably, that risk includes the fact that there may be no one to subrogate against or that the injured party's recovery is inadequate. The *Frohlich* court found that the record left an open factual question as to whether the $212,500 settlement Frohlich received was full compensation. Thus, the case was remanded for a trial court determination of whether Frohlich's damages exceeded the amount of the settlement.

Neumann argues that *Frohlich* governs the outcome here and that the trial court improperly determined that American Family should receive a portion of the tort settlement, because

Neumann was not fully compensated for her injuries by the tort settlement. American Family argues that under § 48-118 it should receive all of the settlement proceeds because its statutory subrogation interest exceeds the settlement funds by nearly $20,000. This case is different from *Frohlich*. There, the record did not reveal whether the tort settlement was full compensation for the injuries; here, the parties have agreed that the settlement is not full compensation. *Frohlich* is also different in that the right of subrogation there arose from a contract of insurance between the injured party and the company asserting the right of subrogation. Here, American Family's right of subrogation is premised upon a statute.

 American Family relies upon the language of § 48-118, particularly the portion reading "shall be subrogated" and asserts that it has a right of statutory subrogation. In *Frohlich*, the Supreme Court stated that "in the absence of a valid contractual provision or *statute to the contrary*, an insurer may exercise its right of subrogation only when the insured has obtained an amount that exceeds the insured's loss." (Emphasis supplied.) 243 Neb. at 122, 498 N.W.2d at 81.

Is § 48-118 a "statute to the contrary" which dispenses with the equitable requirement from *Frohlich* that the injured party be fully compensated before the insurer can collect its subrogation interest? The Supreme Court in *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997), strongly suggests that the answer to the above question is in the affirmative. *Muller* was a declaratory judgment action brought to determine the rights of Susan Muller, widow and personal representative of the estate of her deceased husband, Terry Lee Muller, under the underinsured motorist provision of a policy issued by Tri-State Insurance Company. Terry Lee Muller died as the result of an automobile accident which arose out of and in the course of his employment. Tri-State (coincidentally also the workers' compensation carrier) had paid the widow $188,700 in workers' compensation benefits, and that claim remained open and ongoing. The widow sued the tort-feasors for the wrongful death of her husband and received a judgment in the amount of $751,845.08. The tort-feasors' insurance carrier paid $100,000, the full amount of its coverage, to the office of the clerk of the

district court. The principal issue on appeal was whether Tri-State could claim a setoff against its $250,000 underinsured motorist coverage for the $100,000 paid by the tort-feasors' insurer and for the $188,780 paid to the widow in workers' compensation benefits. Under Neb. Rev. Stat. § 60-578 (Reissue 1988), the court allowed the setoff against the underinsured motorist coverage for the $100,000 paid by the tort-feasors. But, based on the holding in *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968), the claimed setoff pursuant to an express provision of the Tri-State policy for the workers' compensation benefits paid to the widow was disallowed on the ground that this policy provision was void as against public policy. In the process of reaching this result, the court rejected the widow's argument that she had not yet received the $100,000 and therefore Tri-State could not set it off against its underinsured motorist coverage. Citing § 48-118, the court said that the $100,000 from the tort-feasors' insurer being held by the clerk of the district court "accrues to the widow's benefit, subject to whatever subrogation rights Tri-State [in its capacity as the workers' compensation carrier] may have." *Muller*, 252 Neb. at 10, 560 N.W.2d at 137.

Justice Wright, joined by Chief Justice White, concurred in *Muller*, acknowledging that current law required the result, but observing that the result was that "the more the tort-feasor pays, the less the widow, who. has never been fully compensated, receives." *Id.* at 11, 560 N.W.2d at 137. The effect of Tri-State's right of subrogation under § 48-118 for previous workers' compensation payments led the concurring justices to the following conclusion:

> If the victim has been fully compensated by other sources, the workers' compensation insurer should get its money back because the workers' compensation payments would amount to a double recovery. Here, subrogation takes away benefits from the family of a victim that has not been fully compensated for its loss.

252 Neb. at 11-12, 560 N.W.2d at 137.

Obviously, the concurring members of the *Muller* court would prefer a rule that subrogation is not available when the injured party has not been fully compensated. Yet, although the

widow was obviously not fully compensated, the majority in *Muller* found that § 48-118 subrogation was available against the $100,000 paid by the tort-feasors' insurer. That conclusion is consistent with existing law. A number of years earlier, the Supreme Court said that the "right of an employer to subrogation for amounts paid to the injured employee as workmen's compensation payments is well established in Nebraska statutory law." *Turner v. Metro Area Transit*, 220 Neb. 189, 191, 368 N.W.2d 809, 811 (1985) (quoting the 1913 version of § 48-118 as support for this proposition).

In the case at hand, unlike in *Muller*, there has not been a determination by any court of the monetary value of Neumann's injuries as there had been in *Muller*. However, there is the stipulation that the $120,000 settlement from the tort-feasors is inadequate. Thus, although *Muller* does not squarely address the precise issue we face, it does suggest that the lack of full recovery for the injured party does not prevent the compensation carrier from collecting on its right to subrogation, because the right thereto is statutory, and thus within an exception to the equitable subrogation doctrine from *Frohlich*. Accordingly, we hold that because the workers' compensation carrier's right of subrogation is statutory, the fact that the injured employee is not fully compensated by the tort-feasor does not prevent the compensation carrier from fully recovering on its right to subrogation.

Summary judgment is proper only when the pleadings, affidavits, depositions, stipulations, and admissions in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. See, *Anderson v. Nashua Corp.*, 251 Neb. 833, 560 N.W.2d 446 (1997); *Burke v. Blue Cross Blue Shield*, 251 Neb. 607, 558 N.W.2d 577 (1997). When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independent from the conclusion reached by the trial court with regard to that question. *Burke v. Blue Cross Blue Shield, supra*; *Farm Bureau Ins. Co. v. Bierschenk*, 250 Neb. 146, 548 N.W.2d 322 (1996).

Due to the stipulations by the parties, there is no genuine issue of material fact in this case. Thus, the question is one of

law. American Family was entitled to judgment as a matter of law. Based on the language of § 48-118, which provides that an injured employee such as Neumann gets from the tort-feasor only the "excess" over what the compensation carrier has paid, we hold that the district court's equitable division of the tort settlement proceeds was in error. The law, as now written, gives the compensation carrier the "first dollars," and the injured employee gets only the "excess" when there is a recovery from a tort-feasor liable for the employee's injury. Whether it should be this way is a matter of policy for the Legislature, and not for us. Under § 48-118, the compensation carrier is clearly subrogated, by statutory language taking the matter out of the *Frohlich* equitable subrogation rule, to the entire recovery from the tort-feasor. Given this statutory mandate, the district court erred, as a matter of law, in attempting to equitably divide the $118,000 paid to Neumann by the tort-feasors. The district court should have found that American Family was entitled to all of the tort recovery, after the cost of recovery, which we now address.

*Attorney Fees.*

Neumann asserts on cross-appeal that any amount paid to American Family should be reduced by its proportionate share of the attorney fees and costs incurred in creating a common fund. She argues that "[a]ll of the work and effort necessary to create the total fund of $120,000.00 [it is actually a $118,000 fund which is at issue] were performed" by her attorneys. Reply brief for appellee on cross-appeal at 6. In its order, the trial court denied the claim for attorney fees and expenses against the $26,000 that the court awarded to American Family. The trial court did not express a rationale for that decision. The joint stipulation of facts provides that Neumann's counsel "claims" an attorney fee of $39,333 and "out of pocket expenses" in the amount of $1,241.62 pursuant to the fee agreement. There is no stipulation that the fees and costs are fair, reasonable, necessary, or customary. The stipulation does establish that American Family was not involved in the prosecution of Neumann's claim or in the negotiation of the settlement with the tort-feasors. Finally, the parties stipulated that adjustors from American Family did notify the liability carriers of its subrogation rights, but never hired its own attorney to represent its interests.

The question of attorney fees and expenses is resolved in a case such as this by the common fund doctrine, which provides that an attorney whose efforts create a fund to which others also have a claim is entitled to recover his or her fees and costs from the entirety of that fund. See *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994).

Where the holder of a subrogation right does not come into the action, whether by refusal to do so or mere acquiescence in the plaintiff's action, but nonetheless accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney fees. *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961). The concept that the employer or compensation insurer who benefits from third-party tort litigation must also share in the expenses thereof is now codified in § 48-118. See *Kaiman v. Mercy Midlands Medical & Dental Plan*, 1 Neb. App. 148, 491 N.W.2d 356 (1992). Section 48-118, which provides that where an injured employee brings an action against an alleged third-party tort-feasor, the employee shall be entitled to "deduct from any amount recovered the reasonable expenses of making such recovery, including a reasonable sum for attorney's fees, which expenses and attorney's fees shall be prorated to the amounts payable to the employer or his or her insurer under the above right of subrogation" when the insurer fails to join in the prosecution of the case by counsel. But see *Schulz v. General Wholesale Coop. Co., Inc.*, 195 Neb. 410, 238 N.W.2d 463 (1976) (holding that injured plaintiff is not entitled to recover attorney fees where interests of compensation carrier are fully and adequately represented by its own counsel and carrier did not rely on plaintiff's counsel to effect recovery of its subrogation interest). In short, to avoid paying fees to the injured employee's attorney, the compensation insurer must have counsel who makes a meaningful and ongoing contribution to the pursuit of the third-party case, as opposed to a merely symbolic appearance.

Notwithstanding the above principles which we believe to be well established and known, the instant case presents a unique factual situation with respect to the application of the

common fund doctrine. Every discussion of this doctrine in Nebraska case law thus far has dealt with a tort recovery which is greater than the amount of workers' compensation benefits paid out. In the present case, the tort settlement of $120,000 is some $21,000 less than what American Family has already paid out on Neumann's workers' compensation claim, and further payments are likely. We have concluded that only American Family is entitled to the proceeds of the third-party settlement. In *Kaiman v. Mercy Midlands Medical & Dental Plan*, 1 Neb. App. at 154, 491 N.W.2d at 359, this court held that " ' "when the insurance company has benefited from the work done by the insured's attorney there is no inequity in requiring it to bear its fair share of the collection expense." ' " Clearly, the common fund doctrine looks to who benefits and who did the work. Obviously American Family benefits. However, American Family was not represented by its own counsel, it relied on counsel for Neumann to effect a recovery, and it now claims, as is its right under present law, all of the recovery. But American Family does not receive its recovery at no cost. The lower court erred in failing to make American Family contribute its appropriate share of the attorney fees and costs. American Family's share is *all* thereof, because American Family is the only party to receive a recovery.

Although American Family must pay fees and costs, it is not a party to the attorney fees contract between Neumann and her counsel. The record contains the fee arrangement between Neumann and her attorneys, calling for a fee of "33.3% of the total money recovered if the matter is settled before the filing of a lawsuit" and "40% of the total money recovered after a lawsuit is filed." Is American Family bound by this fee contract? In *Nekuda v. Waspi Trucking, Inc.*, 222 Neb. 806, 388 N.W.2d 438 (1986), the Supreme Court considered whether the state, which had recovered its workers' compensation payments through the third-party settlement effectuated by the injured employee's attorney, should be bound by the fee agreement between the attorney and the injured employee. That agreement provided for a fee of one-third of the recovery, but the state objected to paying a fee based on the agreement. The trial court in *Nekuda* held the state to the agreement, finding that the agreement was

" 'customary, standard, fair and reasonable in this jurisdiction.' " *Id.* at 810, 388 N.W.2d at 441. The Supreme Court upheld this decision, observing that no evidence to the contrary was adduced and that "[t]he evidence supports the court's factfindings as to the amount of the fee." *Id.* at 810-11, 388 N.W.2d at 441. In this case, there is little evidence upon which to make a "factfinding" as to what the fee should be.

There is no evidence as to the amount of time spent on the case by Neumann's attorneys, what was done, or by whom it was done, nor is there evidence about the degree of skill involved in the representation or the reasonable value in the Omaha area of such representation. There was no suit filed, no trial, and no dispute about the obvious negligence of the settling defendants. The injury of Neumann is obviously quite serious and reasonably justifies a settlement of the policy limits of the responsible driver, Bush. We read *Nekuda* to require some evidence on the matter of fees. Here, there is none, save the agreement. Thus, we cannot simply order American Family to pay a one-third contingency fee. Therefore, we remand the matter with directions for the trial court to take evidence on the factual questions inherent in the question of what American Family should pay as attorney fees and costs for the recovery which Neumann's counsel has accomplished for American Family.

REVERSED AND REMANDED WITH DIRECTIONS.