IN RE GUARDIANSHIP AND CONSERVATORSHIP OF THE ESTATE
OF LETTIE TUCKER, AN INCAPACITATED PERSON.
DAWN MUFF AND ALICIA LAURIDSEN, APPELLANTS,
V. RAYMOND CALKINS, APPELLEE.

606 N.W. 2d 868

Filed March 7, 2000.    No. A-99-511.

William G. Line for appellants.

Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellee.

IRWIN, Chief Judge, and CARLSON, Judge, and HOWARD, District Judge, Retired.

CARLSON, Judge.

Dawn Muff and Alicia Lauridsen, coguardians and coconservators of the estate of Lettie Tucker, appeal from a judgment of the county court for Dodge County, objecting to the court's award of attorney fees and costs to Thomas Thomsen in the amount of $798. For the reasons set forth below, we affirm.

## BACKGROUND

On March 3, 1999, Thomsen filed a petition at the request of Raymond Calkins (Calkins). The record is unclear regarding Calkin's exact relationship to Tucker, although the record shows that Calkins is either Tucker's brother or her son. In the petition, Calkins alleged that Tucker is incapacitated and that the appointment of a guardian and a conservator for Tucker is necessary and desirable as a means for providing for Tucker's continuing care and supervision. Calkins alleged that at the time the

petition was filed, Tucker resided at Arbor Manor, a skilled-care nursing facility, and was 87 years old, Tucker's date of birth being October 31, 1911. Calkins requested that the court appoint Nebraska Trust Company as Tucker's conservator and Muff and Walter Calkins, two of Tucker's grandchildren, as coguardians.

Calkins also alleged that it was necessary for the court to appoint a temporary guardian and a temporary conservator for Tucker. Specifically, Calkins stated that Tucker had granted Muff a power of attorney and that Muff indicated her intention to move Tucker from Arbor Manor to an apartment or assisted living arrangement. Calkins stated that Tucker needs to be in a nursing home in order to receive 24-hour care and supervision and that removing Tucker from the nursing home would be detrimental to Tucker's health. Calkins stated that the court should appoint either a visitor, physician, guardian ad litem, or attorney to represent Tucker's interests. Calkins stated that he believed that Tucker has an interest in certificates of deposit totaling $41,000, $6,000 or $7,000 in cash, a coin collection, and a house in O'Neill, Nebraska. Calkins alleged that the court's appointment of a temporary conservator for Tucker is necessary to avoid the unnecessary wasting of Tucker's assets.

In an order filed on March 3, 1999, the court appointed Nebraska Trust Company as temporary conservator, Walter Calkins and Muff as temporary guardians, and Leta Fornoff as Tucker's guardian ad litem. The court ordered that Dr. Virgil Ottun, Tucker's physician, examine Tucker and that Ottun submit a written report to the court. The court noted that Tucker did not appear to have counsel of her own choice at that time.

In an amendment filed March 5, 1999, the court removed Muff as temporary guardian because Muff refused to sign the acceptance of appointment. On the same date, letters of temporary conservatorship and temporary guardianship were filed with the court.

A hearing on Calkins' petition was held on March 25, 1999. Tucker was represented by counsel of her own at this hearing, and Tucker, Tucker's counsel, Calkins, Thomsen, and Fornoff were present. At this hearing, Calkins offered into evidence Ottun's report. Tucker's attorney objected to this exhibit, and although the court stated that it would make a ruling upon fur-

ther presentation of evidence, the trial court never ruled on Tucker's objection and the admission of Ottun's report.

Fornoff testified without objection that she talked to Ottun and that Ottun stated that because of various medical conditions, Tucker was in need of a guardian and that it was in Tucker's best interests to have a conservator. Fornoff testified that Ottun stated that Tucker had the mental competency to choose her own guardian and conservator. Fornoff also testified that Ottun expressed the opinion that Tucker could be transferred from Arbor Manor to an assisted living facility and that this new facility would meet Tucker's needs.

Fornoff also stated that she had spoken to Tucker and that Tucker stated that she had appointed Muff as her attorney in fact. Fornoff stated that Tucker thought that Muff was serving in the same capacity as a guardian and conservator and that Tucker told Fornoff that she wants a guardian and conservator to take care of her medical needs, to generally assist her, and to help her with her finances. Fornoff testified that Tucker had consistently expressed the desire that Muff and Lauridsen serve as her coguardians and coconservators. Fornoff recommended that the court appoint Muff and Lauridsen as coguardians and that Fornoff would not be opposed to the appointment of Muff and Lauridsen as coconservators, as long as both Muff and Lauridsen were required to sign any checks or financial documents.

In an order filed March 30, 1999, the court stated that Tucker had indicated a desire for the appointment of a guardian and conservator and that the appointment of both was the least restrictive alternative available. The court stated that the appointment of a guardian and conservator is necessary to provide Tucker with continuing care and supervision and to preserve her assets. The court appointed Muff and Lauridsen as coguardians and coconservators.

On April 15, 1999, Thomsen moved for an order "directing the payment of his attorney's fees by the Conservator herein for services rendered to the estate of Lettie Tucker."

On April 19, 1999, Muff and Lauridsen filed an objection to Thomsen's motion for attorney fees, stating that Thomsen did

not represent Tucker, but at all times acted as counsel for Calkins, Walter Calkins, and Reena Stoffer.

A hearing was held on Thomsen's motion for attorney fees on April 26, 1999. At this hearing, Thomsen testified that he filed a petition on Calkin's behalf as an interested person, seeking the appointment of a guardian and conservator for Tucker. Thomsen testified that he prepared all of the court orders, applications, motions, notices in the file, and letters of guardianship and conservatorship. Thomsen testified that he also formalized the court's order appointing coguardians and coconservators for Tucker.

Thomsen testified that he filed a motion for attorney fees and attached a statement to his motion, stating that he spent 8.6 hours on the appointment of a guardian and conservator for Tucker and that he performed those services at a rate of $90 per hour. Thomsen also testified that he advanced expenses to the Dodge County Court in the amount of $24. Thomsen testified that the services he performed were to benefit Tucker, specifically to protect Tucker's assets and her person. On cross-examination, Thomsen testified that he did not have any conferences with Tucker and that Calkins, not Tucker, retained his services.

In an order filed April 26, 1999, the court ordered that Muff and Lauridsen pay Thomsen $798 in attorney fees and costs.

Muff and Lauridsen appeal.

## ASSIGNMENTS OF ERROR

On appeal, Muff and Lauridsen contend that the county court erred in granting Thomsen attorney fees and costs in the amount of $798. Specifically, Muff and Lauridsen argue that the county court erred in awarding Thomsen fees because (1) there is no such office as an attorney for an estate and (2) at all times Thomsen was proceeding contrary to Tucker's expressed desires and wishes.

## STANDARD OF REVIEW

In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Estate of Stull*, 8 Neb. App. 301, 593 N.W.2d 18 (1999), citing *In re Estate of*

*Stephenson*, 243 Neb. 890, 503 N.W.2d 540 (1993). In reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *In re Estate of Stull, supra*, citing *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999).

## ANALYSIS

On appeal, Muff and Lauridsen argue that the county court erred in awarding Thomsen fees because there is no such office as an attorney for an estate and, secondly, because at all times Thomsen was proceeding contrary to Tucker's expressed desires and wishes.

■ Ordinarily, the right of an attorney to compensation for his or her services depends upon a contract of employment, express or implied. *In re Estate of Stull, supra*. See, also, *Doyle v. Union Ins. Co.*, 209 Neb. 385, 308 N.W.2d 322 (1981) (holding that attorney's claim for professional services against person sui juris, or against property of such person, must rest upon contract of employment, express or implied, made with person sought to be charged or with his agent).

In *Doyle v. Union Ins. Co., supra*, the Nebraska Supreme Court held that a law firm, engaged by the directors of a mutual insurance company, was not entitled to attorney fees from the trustee of a trust created for the benefit of the policyholders during the transition from a mutual company to a stock company merely because the law firm claimed to have benefited the beneficiaries of the trust by its actions. In so holding, the Supreme Court noted that during the time period for which the law firm sought payment, the law firm was actively opposing the interests of the policyholders. Additionally, the Supreme Court cited *In re Estate of Kierstead*, 121 Neb. 423, 426, 237 N.W. 299, 300 (1931), in which the Supreme Court stated:

"An attorney's claim for professional services against persons *sui juris*, or against the property of such persons, must rest upon a contract of employment, express or implied, made with the person sought to be charged or with his agent. No one can legally claim compensation for voluntary services to another, however beneficial they may be, especially where rendered without his knowledge or con-

sent, nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another by whom the attorney may have been employed. . . . So, where one of several parties, all of whom are equally interested in a cause, employs an attorney to conduct the case for him, and the benefit of such services from the nature of the case extends to all the other interested parties, the other parties, merely by standing by and accepting the benefit of such services without objection, do not become liable for the attorney's fees."

In the instant case, Muff and Lauridsen argue that the court should not have awarded Thomsen attorney fees, because at all times Thomsen was proceeding contrary to Tucker's expressed desires and wishes. Muff and Lauridsen's claim is not supported by the evidence. The record shows that Tucker thought that Muff, whom Tucker had previously appointed as her attorney in fact, served in the same capacity as guardian and conservator and that Tucker told Fornoff that she wanted a conservator and guardian to take care of her medical needs, to generally assist her, and to help her with her finances. The record shows that Tucker was aware Calkins was attempting to appoint a guardian and conservator for her and that Tucker agreed that she needed both a guardian and a conservator. The issue of whether the court erred in appointing both a guardian and a conservator for Tucker has not been appealed. Clearly, on this record, Thomsen was not actively opposing Tucker's interests during the time for which Thomsen requests payment for his services.

Additionally, 7A C.J.S. *Attorney & Client* § 288 at 534 (1980) states:

Unless the circumstances show that the services were intended to be gratuitous, where services are rendered by an attorney at the request of another, or where the benefits of such services are knowingly accepted, a promise to pay therefor will be presumed, particularly where it would be inequitable for the party benefited to share the benefit without contributing to the expense. Thus, where there is even slight proof of an employment of the attorney by the client, the fact that the latter stood by without objection and allowed the attorney to render valuable services in his

behalf will estop him to deny the fact of employment. The acquiescence must be such as presumes volition on the part of the person sought to be charged, however, and there is no acquiescence where he has no choice but to avail himself of the efforts made by the attorney.

In the instant case, the record shows that Thomsen rendered valuable services on Tucker's behalf and that Tucker knowingly accepted the benefits of Thomsen's services.

## CONCLUSION

Therefore, we conclude that the trial court did not err in ordering Muff and Lauridsen to pay Thomsen $798 in attorney fees and costs.

AFFIRMED.